UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JASON PECUCH,

                            Plaintiff,

                                                              AMENDED
                                                       DECISION & ORDER

v.
                                                       Case # 13-CV-6102-FPG

C.O. PLATT, C.O. CORNELL
and CAPT. PATRICK JOHNSON,

                            Defendants.

---

## INTRODUCTION

*Pro se* Plaintiff Jason Pecuch ("Plaintiff") originally brought this action on February 22, 2013 against three employees of the Chautauqua County Jail: Corrections Officer Joshua Platt ("C.O. Platt"), Corrections Officer Dale Cornell ("C.O. Cornell"), and Captain Patrick Johnson ("Captain Johnson").[1]  ECF No. 1.  Plaintiff filed an amended complaint on March 17, 2014. ECF No. 5.  The operative Complaint ("Complaint") now consists of both the original Complaint and the Amended Complaint.  *See* ECF No. 6.

This case centers around a fight that occurred on October 7, 2012 between Plaintiff and Jason White ("White"), both of whom were in custody at Chautauqua County Jail at the time. Plaintiff's Complaint, seeking relief under 42 U.S.C. § 1983, alleges Defendants violated the Eighth Amendment to the U.S. Constitution when they failed to protect Plaintiff from being assaulted by White.  Plaintiff also alleges his injuries were exacerbated due to the fact that the bunk bed he hit his head on during the fight was not securely bolted to the floor.

---

[1]       Plaintiff's claims against Captain Johnson were previously dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A. ECF No. 6.

Defendants have moved for summary judgment, ECF No. 30, and Plaintiff has not filed a response or requested an extension of time to do so.  For the following reasons, Defendants' Motion is granted.

## DISCUSSION

### I.    Summary Judgment Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  On the other hand, the non-moving party may defeat a summary judgment motion by producing sufficient specific facts to establish that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

When reviewing a motion for summary judgment, the court must resolve genuinely disputed facts in favor of the non-moving party and must view inferences to be drawn from the facts in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).  However, a party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 12 (2d Cir. 1986).

The submissions of a *pro se* litigant are read liberally and interpreted "to raise the strongest arguments that they suggest." *Fulton v. Goord,* 591 F.3d 37, 43 (2d Cir. 2009). Because *pro se* litigants are generally unfamiliar with the procedural requirements of summary judgment motions, they are provided with a specific notification at the time the motion is filed. *See Irby v. New York City Transit Auth.*, 262 F.3d 412, 414 (2d Cir. 2001); *see also* L. R. Civ. P. 56(b).

Nevertheless, proceeding *pro se* does not relieve a litigant from the usual requirements of summary judgment. *See Wolfson v. Bruno,* 844 F. Supp. 2d 348, 354 (S.D.N.Y. 2011).  When

a *pro se* plaintiff fails to oppose a motion for summary judgment after having been warned of the consequences of such a failure, "summary judgment may be granted as long as the Court is satisfied that the undisputed facts 'show that the moving party is entitled to judgment as a matter of law.'" *Almonte v. Pub. Storage Inc.*, No. 11 CIV. 1404 DLC, 2011 WL 3902997, at *2 (S.D.N.Y. Sept. 2, 2011) (quoting *Champion v. Artuz,* 76 F.3d 483, 486 (2d Cir. 1996); *see also Morrison v. Dr. Pepper Snapple Group*, 916 F. Supp. 2d 372, 374 (W.D.N.Y. 2013).

## II.    The Material Facts Are Undisputed

Here, the record reflects that Defendants' Motion for Summary Judgment was served and filed with a "Notice to *Pro Se* Litigant Regarding Rule 56 Motion for Summary Judgment," which provides information about the procedural requirements of summary judgment motions and warns Plaintiff about the consequences of failing to respond.   ECF No. 30-29.   Because Plaintiff has failed to contest the facts presented by Defendants, or otherwise respond to Defendants' Motion for Summary Judgment, the Court considers the admissible evidence cited by Defendants to be undisputed.   *See Gubitosi v. Kapica*, 154 F.3d 30, 31 n.1 (2nd Cir. 1998).   I therefore adopt Defendants' Statement of Undisputed Material Facts (ECF No. 30-30).   Those undisputed facts establish the following:

1. Before the incident at issue, Plaintiff was never previously attacked by any inmates.

2. Plaintiff did have one previous altercation with White, who had allegedly pushed Plaintiff.   However, Plaintiff never reported this incident to C.O. Cornell, C.O. Platt, or anyone else working at Chautauqua County Jail.

3. At some point before the fight,[2] White allegedly threatened to "kick [Plaintiff's] ass" if Plaintiff did not continue to give White certain medications that had been prescribed to Plaintiff. However, Plaintiff never reported this incident to C.O. Cornell, C.O. Platt, or anyone else working at Chautauqua County Jail.

4. On October 6, 2012, Plaintiff reported to C.O. Cornell that there was "a problem" between him and White, and that they needed to be separated. However, Plaintiff did not report any specifics of the situation, report that White had ever threatened him, or tell C.O. Cornell that he felt unsafe.

5. On October 7, 2012, Plaintiff told C.O. Platt that he was having a problem with White and that they needed to be separated. As with C.O. Cornell, however, Plaintiff did not report any specific information about why Plaintiff and White needed to be separated and did not tell C.O. Platt that White had threatened him.

6. On October 7, 2012, security camera footage at the Chautauqua County Jail captured a fight between Plaintiff and White. The footage was secured and maintained in the regular course of business by the Chautauqua County Jail. The footage was recorded simultaneously as the event occurred, and the video has a time-stamp appearing at the bottom of the footage.

---

[2] The exact timeline is unclear. The excerpts from Plaintiff's deposition provided by Defendants indicate both that this event happened "two to seven days before the incident," ECF No. 30-1, Ex. D ("Pecuch Dep.") at 47, and that this event could have happened the day of the fight, *Id.* at 86.

7.  Captain Johnson reviewed the security video of the incident, and compared the images of the people involved with the booking forms and photographs of inmates present in the cell on that date.  Based on his familiarity with the inmates and his review of the records, Captain Johnson concluded that Plaintiff is the person seen wearing shorts in the video and White is the one wearing pants.  Captain Johnson also confirmed that the time-stamp in the video accurately reflects the occurrence time.

8.  The video starts at 6:19 p.m.  Plaintiff and White are together in the corner of a cell, along with a few other inmates.  White walks away, and appears to rummage through a basket underneath a bunk bed.  White then walks to another corner of the cell, across the room with his back towards Plaintiff.

9.  After standing with his back towards Plaintiff for a few seconds, White turns around and walks towards Plaintiff. White walks up very close to Plaintiff and appears to make a gesture with his arm towards Plaintiff at 6:19:38, although it is unclear exactly what White does.[3]  Plaintiff does not appear to react to White's gesture or move in any way, and none of the other inmates in the cell react either.  White then walks back away from Plaintiff, to the same spot across the room.

---

[3]      Due to the angle of the security camera, the video does not show the head of either White or Plaintiff during this part of the video.

10. At 6:19:46, Plaintiff walks towards White, and they appear to talk to each other.[4]

11. Plaintiff and White turn away from each other briefly, and then at 6:19:53 Plaintiff turns back towards White and rushes towards him.

12. At 6:19:55, Plaintiff punches White in the face and the fight ensues. Other inmates react instantly by getting out of their seats or beds and moving around the cell.

13. Three seconds later, Plaintiff careens into a bunk bed. The bunk bed appears to move when Plaintiff falls into it.

14. After Plaintiff and White get up, White walks away and they are briefly separated.

15. At 6:20:14, Plaintiff walks back towards White and holds up his fists in a fighting stance. Plaintiff and White begin to fight again, with both men throwing punches.

16. Plaintiff and White fall to the ground at 6:20:27. Plaintiff gets on top of White, and they continue to struggle.

17. At 6:21:43, two officers arrive on the scene and pull Plaintiff off of White.

## III.    Failure To Protect

In his Complaint, Plaintiff alleges C.O. Platt and C.O. Cornell violated the Eight Amendment[5] when they failed to protect him from White. Defendants argue that summary

---

[4]      The video does not contain audio. Again, at this point in the video neither Plaintiff's nor White's head is visible. But their body language and the fact that they are facing each other indicates that they are talking to each other.

judgment is warranted because the video evidence conclusively establishes that Plaintiff was the violent aggressor and because no reasonable jury could conclude that Defendants were deliberately indifferent to Plaintiff's safety.[6] I agree.

To sustain a failure to protect claim, an inmate must demonstrate that (1) he was incarcerated under conditions posing a substantial risk of serious harm; and (2) prison officials were deliberately indifferent to that risk. *Randolph v. Griffin*, No. 12-CV-745S, 2014 WL 3548967, at *6 (W.D.N.Y. July 17, 2014) (citing *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996)). In order to establish deliberate indifference, an inmate must show both that the official knew that the inmate faced a substantial risk of harm and that the official disregarded that risk by failing to take measures to abate the harm. *Randolph*, 2014 WL 3548967, at *6.

Here, undisputed video evidence shows that Plaintiff instigated the violence by walking up to White and punching him in the face.[7] There also is a moment in the fight where the altercation seems to have calmed down, and White walks away from Plaintiff. But the fight resumes when Plaintiff walks toward White and puts his fists up in the air. "[A]n inmate's own violent tendencies are not the type of 'substantial risk of serious harm' protected by the Constitution." *Louis-Charles v. Courtwright*, No. 9:11-CV-147 GLS/TWD, 2014 WL 457951,

---

[5]    Because Plaintiff was a pre-trial detainee at the time of the incident, and the Eighth Amendment's protection from cruel and unusual punishment does not apply until after conviction and sentence, Plaintiff's claim is governed by the Due Process Clause of the Fourteenth Amendment. *Barnes v. Cnty. of Monroe*, 85 F. Supp. 3d 696, 724 (W.D.N.Y. 2015). However, the standards applied under both clauses are the same. *Id.*

[6]    Defendants also argue that Plaintiff failed to exhaust available administrative remedies, that Defendants are entitled to qualified immunity, and that "Plaintiff can only assert personal capacity claims against Defendants." ECF No. 30-31. Because the Court finds that summary judgment is warranted on other grounds, the Court declines to reach these arguments.

[7]    Although White appears to walk up very closely to Plaintiff prior to the physical altercation and make some kind of gesture towards Plaintiff with his arm, the video also shows that neither Plaintiff nor any other inmates in the cell reacted at all when White made this gesture. Most importantly, it is clear from the video that White walked away from Plaintiff after making this gesture. Fifteen seconds later, Plaintiff rushes towards White and punches him in the face. At that point, everyone in the cell immediately gets up and reacts as if a fight has started. Thus, although the video cannot establish conclusively that Plaintiff made the first physical contact, no reasonable juror could conclude that Plaintiff was not the violent aggressor. *See Scott*, 550 U.S. at 380. Plaintiff has not alleged that the video was doctored or altered in any way, or that the events depicted in the video differ in any way from what actually happened.

at *6 (N.D.N.Y. Feb. 4, 2014); *see also Price v. Engert*, 589 F. Supp. 2d 240 (W.D.N.Y. 2008) (holding that inmate plaintiff failed to provide evidence that he was subjected to a substantial risk of harm, where plaintiff was injured "only after [he] became violent and belligerent"); *Parks v. City of New York*, No. 04 CIV. 2490 (DC), 2006 WL 944659, at *6 (S.D.N.Y. Apr. 11, 2006) (holding that plaintiff was the instigator, and therefore could not recover on a failure to warn claim, where plaintiff was injured while carrying out a plan to rob a fellow inmate).

Even if Plaintiff had raised a triable issue as to the first prong of his failure to protect claim, summary judgment would still be warranted because there is no evidence that either C.O. Platt or C.O. Cornell were deliberately indifferent. Plaintiff admitted at his deposition that he never told C.O. Platt, C.O. Cornell, or anyone else working at Chautauqua County Jail that White had threatened to beat him up or that he felt unsafe. Pecuch Dep. at 46-52, 86-87. Instead, Plaintiff merely complained that he had "a problem" with White, and that they needed to be separated from each other. *Id.* Under those circumstances, no reasonable jury could find that Defendants were deliberately indifferent. *See Shell v. Brun*, 585 F. Supp. 2d 465, 470 (W.D.N.Y. 2008) (granting summary judgment and dismissing plaintiff inmate's failure to warn claim, where the inmate had expressed concerns about his safety but never identified any specific threat, because the plaintiff failed to show "that defendants knew of a particularized threat to his safety"); *Sheils v. Jordan*, 841 F. Supp. 2d 727, 729 (W.D.N.Y. 2012) (holding that plaintiff's letter, containing unsubstantiated allegations that plaintiff had been assaulted at a particular facility in the past and asking not to be returned there, was insufficient to support his claim that the official who received the letter was deliberately indifferent when the official failed to prevent plaintiff's return to that facility).

## IV.   Failure to Securely Bolt a Bunk Bed to the Floor

In his Complaint, Plaintiff also alleges Defendants are liable for failing to securely bolt to the floor the bunk bed Plaintiff hit his head on during the fight.  This claim fails for two basic reasons.

First, Plaintiff has not actually alleged any personal involvement on the part of C.O. Platt or C.O. Cornell with respect to the failure to bolt the bunk bed to the floor.  As a prerequisite to an award of damages under § 1983, a plaintiff must show that each defendant was personally involved in the alleged constitutional deprivation.  *See Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997); *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977).  A complaint based on a violation under Section 1983 that does not allege the personal involvement of the defendant is "fatally defective on its face."  *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 886 (2d Cir. 1987) (internal quotations and citations omitted).  Here, Plaintiff only alleges "Captain Johnson should have been aware of a faulty bunkbed that wasn't bolted to the floor nor the wall," ECF No. 1, at 5, and states that "[i]t is the captain's responsibility to make sure that the inmates are in a safe environment," ECF No. 5, at 2.  Plaintiff does not state how either C.O. Platt or C.O. Cornell could have been personally involved in failing to bolt a bunk bed to the floor.

Second, Plaintiff's allegation amounts to mere negligence and does not rise to the level of a constitutional violation.  In *Daniels v. Williams*, 474 U.S. 327, 332 (1986), an inmate sued for damages under § 1983 after he slipped on a pillow left on the stairs by prison officials.  The Supreme Court held that the plaintiff had not alleged a constitutional violation:

> We think that the actions of prison custodians in leaving a pillow on the prison stairs . . . are quite remote from the concerns [of the Due Process Clause].  Far from an abuse of power, lack of due care suggests no more than a failure to measure up to the conduct of a reasonable person.  To hold that an injury caused by such conduct is a deprivation within the meaning of the Fourteenth Amendment would trivialize the centuries-old principle of due process of law.

*Id.*; *see also Powers v. Gipson,* No. 04-CV-6338L(P), 2004 WL 2123490, at \*2 (W.D.N.Y. Sept. 14, 2004) ("mere negligence on the part of state officials is not actionable under § 1983"). Here, even if we assume that failing to bolt a bunk bed to the floor could somehow have contributed to Plaintiff's injuries rather than minimized them (as common sense would suggest), this lack of due care does not amount to a deprivation of Plaintiff's constitutional rights.

## CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment (ECF No. 30) is GRANTED. Plaintiff's Complaint is dismissed with prejudice. The Clerk of Court is directed to close this case.

The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Any request to proceed *in forma pauperis* on appeal should be directed by motion to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

IT IS SO ORDERED.

Dated: October 29, 2015
     Rochester, New York

HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court